**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**SAMI AFFANEH,**

        **Plaintiff,**

-vs-

**MARK HANSEN, District Director,
U.S. Citizenship & Immigration Services, et. al,**

        **Defendants.**

**Case No. C-3-06-267**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR TO REMAND (Doc. #4) AND REMANDING THIS MATTER TO THE U.S. CITIZENSHIP & IMMIGRATION SERVICES**

---

This matter is before the Court pursuant to a motion to dismiss or remand[1] brought by Defendants Mark Hansen, Emilio T. Gonzales, Michael Chertoff, Robert Mueller and Alberto Gonzalez (hereinafter the "Defendants"). (Doc. #4.) Plaintiff Sami Affaneh ("Affaneh") has responded. (Doc. #6.) The Defendants have not filed a response and the time for doing so has run. The Defendants' motion is, therefore, ripe for decision.

Affaneh is a lawful permanent resident of the United States who has filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS"). Affaneh filed for naturalization on April 12, 2004. He was interviewed by the USCIS on April 27, 2005. At that time he was notified that he had passed the English, history and government

---

[1]The Defendants do not identify a federal rule of procedure that authorizes their motion but, in the interest of justice, their motion will be considered.

tests and that his application had been recommended for approval.

In May of 2006, Affaneh moved to Ohio and properly notified the USCIS of his new address. He has requested a status of his case and a final adjudication on at least two occasions, one in September of 2005 and the other in May of 2006. The USCIS office in Cincinnati, Ohio, which now has jurisdiction over his application, responded that his case was still pending and awaiting a background check clearance.

The USCIS has not yet adjudicated Affaneh's application.[2] Affaneh now asks this Court to require the Defendants to adjudicate his application for naturalization and award him reasonable attorney's fees.

## BACKGROUND

The naturalization process begins when the applicant files a Form N-400, "Application for Naturalization." 8 U.S.C. § 1445(a); 8 C.F.R. § 334.2. The USCIS must then conduct a background investigation of the applicant. 8 U.S.C. § 1446(a); C.F.R. § 335.1. At a minimum, the background check includes "a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application." C.F.R. § 335.1.

The USCIS currently relies upon four background check mechanisms: (1) a record check made against the Department of Homeland Security's ("DHS's") immigration systems; (2) an FBI fingerprint check for relevant criminal history; (3) a check against the DHS-managed

---

[2] A request for expedited processing of the FBI's name check for Affaneh was made by the USCIS on September 6, 2006.

Interagency Border Inspection System ("IBIS"); and (4) an FBI name check. IBIS includes information related to persons who are wanted or who are under investigation for serious crimes or suspected of terrorism-related activity. The FBI name check is now known as the National Name Check Program (the "NNCP"). The NNCP was added to the process in response to heightened security concerns following terrorist attacks in the United States.

The regulations provide that an examination of the applicant is conducted after the conclusion of the background check. C.F.R. § 335.2(b). On occasion, as is the case here, the USCIS conducts the examination before the background check is complete.[3] During the examination, the applicant is tested to determine if she or he has the required level of English proficiency and knowledge of the history and government of the United States. 8 C.F.R. §§ 312.1, 312.2.

Ultimately, the USCIS examiner is authorized to make a determination to grant or deny the application. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3. This determination is to occur within the 120 days following the initial examination of the applicant. 8 C.F.R. § 335.3. Finally, if the USCIS fails to make the determination within the 120 days, the applicant may request a hearing before a district court. 8 U.S.C. 1447(b). The district court is empowered to determine the matter or remand the matter to the USCIS with appropriate instructions. Id.

In this case, the USCIS initially examined Affaneh on April 27, 2005. However, the USCIS has not yet adjudicated his application. More than 120 days has passed since then and Affaneh now seeks intervention by this Court. The Defendants respond that the 120 day period

---

[3]According to the Defendants, the USCIS's previous practice was to schedule the interview before the background check was complete.

has not elapsed and they cannot adjudicate his application because they have not yet received the results of his name check from the FBI.

## JURISDICTION

This Court has only the jurisdictional power that is authorized by Article III of the U.S. Constitution and the statutes enacted by Congress that provide an express grant of jurisdiction. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986). Congress has expressly limited the jurisdiction of district courts in the naturalization process. 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.") Further, "[j]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *I.N.S. v. Abudu*, 485 U.S. 94, 110 (1988)).

However, Congress has specifically set forth one exception to its jurisdictional limitation on the naturalization process. That limitation is found in 8 U.S.C. § 1447(b). Section 1447(b) provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

In this case, Affaneh argues that the 120-day period begins when the USCIS conducted the interview on April 27, 2005. The Defendants argue that the 120-day period does not begin to run until the criminal background check and all other aspects of the examination process have

been completed. The issue, then, regarding this Court's jurisdiction is when the 120-day period begins.

In support of their argument, the Defendants cite *Danilov v. Aguirre*, 370 F.Supp.2d 441 (E.D.Va. 2005). As in this case, the plaintiff in *Danilov* was interviewed and more than 120 days passed without an adjudication by the USCIS. *Id.* at 442. The *Danilov* court determined that, despite the passage of 120 days after the interview, subject matter jurisdiction was not granted by 8 U.S.C. § 1447(b).

The *Danilov* court reasoned that the 120-day period did not end the statutorily-required examination and thus trigger the running of the 120 day period. *Id.* at 443. Relying upon 8 U.S.C. § 1446(b)[4], the court found that the examination of an applicant was an ongoing process that encompassed all of the background investigations conducted by the USCIS and the FBI. *Id.* at 444. Section 1446(b) provides that examinations may include the issuance of subpoenas, the taking of testimony under oath and the production and review of relevant documents. *Id.* (citing 8 U.S.C. § 1446(b)). The *Danilov* court also found it important that Congress requires the "completion and review of an FBI criminal background investigation of the applicant as part of the examination process. *Id.* at 443-44.

For these reasons, the *Danilov* court determined that both the FBI background checks and the USCIS interview were merely parts of this overall process and that the required examination was only complete when the investigation and examination of the applicant was complete. Other courts have adopted this same reasoning. *See El Kassemi v. Department of Homeland Security*, No. 06-1010, 2006 WL 2938819 (D.N.J. Oct. 13, 2006) (adopts holding from *Danilov* without

---

[4]Section 1446(b) is the statutory examination requirement reference in section 1447(b).

additional reasoning); *Damra v. Chartoff*, No. 1:05CV0929, 2006 WL 1786246 (N.D.Ohio June 23, 2006) (adopts finding from *Danilov* reasoning that the language of 8 U.S.C. § 1446(b) establishes that the examination is comprised of an investigative process that can include steps beyond that of an individual interview).

However, other courts have determined that the 120-day period begins with the examination and not upon the completion of the examination and the background checks. In *Daami v. Gonzales*, No. 05-3667, 2006 WL 1457862 (D.N.J. May 22, 2006), offered several reasons for this conclusion. First, the fact that section 1447(b) states that the 120 day period begins to run on "the date on which the examination is conducted" strongly implies that there is one date on which the examination takes place. *Id.* at *5. Second, since sections 1446(b), (c) and (d) discuss the examination separately from the investigation discussed in section 1446(a), the investigation must be separate from the examination. *Id.* Third, the implementing regulations differentiate between the "examination" and the "criminal background checks." *Id.* For example, 8 C.F.R. § 335.2 is entitled "Completion of criminal background checks before examination" and specifically states that the FBI background check must be completed before the applicant is notified to appear for the examination. *Id*. (citing 8 C.F.R. § 335.2(b)). In another example, section 335.3(b) allows the Service officer to "continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination." *Id.* The *Daami* court understood this to mean that there is an initial examination after which there may be "one reexamination" and there would be no purpose to specifically permit "one reexamination" if examination means the entire examination process. *Id.* Finally, another section of the CFR states in part: "A decision to grant

or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination. *Id*. at *6. By express terms, this code section instructs the Service that the 120-day period begins to run after the initial examination and not after the conclusion of the entire examination process. *Id.*

Several other courts have adopted the same reasoning and/or reached the same conclusion as the *Daami* court. *See Aslam v. Gonzales*, No. C06-614MJP, 2006 WL 3749905 (W.D.Wash. Dec. 19, 2006); *Shalabi v. Gonzales*, No. 4:04CV866 RWS, 2006 WL 3032413 (E.D.Mo. Oct. 23, 2006); *Khelifa v. Chertoff*, 433 F.Supp.2d 836 (E.D.Mich. 2006); *Al-Kudsi v. Gonzales*, No. CV 05-1584-PK, 2006 WL 752556 (D.Or. Mar. 22, 2006); *Shalan v. Chertoff*, No. 1:05-10980, 2006 WL 42143 (D.Mass. Jan. 6, 2006); *Essa v. United States Citizenship & Immigration Services*, No. CIV051449, 2005 WL 3440827 (D.Minn. Dec. 14, 2005); *El-Daour v. Chertoff*, 417 F.Supp.2d 679 (W.D.Pa. 2005). Also, at least four other courts, without expressly discussing *Danilov*, have found that the term "examination" refers to the interview of the applicant for naturalization by the USCIS examiner. *Al-Kudsi*, 2006 WL 752556 at n.3.

The *Daami* court's reasoning is persuasive and is adopted herein. The "examination" required by section 1447(b) occurs and the 120-day period begins to run when the applicant is interviewed by the USCIS. Because more than 120 days have passed since Affaneh's interview by the USCIS, this court has subject matter jurisdiction over his complaint.

The Parties offer several other arguments regarding subject matter jurisdiction or the lack thereof. However, these arguments need not be addressed herein because this Court has jurisdiction pursuant to 8 U.S.C. § 1447(b).

## HEARING OR REMAND

Pursuant to section 1447(b), this Court may either adjudicate Affaneh's complaint or remand the matter to the USCIS with appropriate instructions. Generally, a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Shalabi*, 2006 WL 3032413 at * 4 (citing *I.N.S. v. Ventura*, 537 U.S. 12 (2002)). Further, as discussed above, the executive branch is generally given great deference in immigration matters.

More specifically, this Court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. Also, to conduct a hearing without completion of an FBI criminal background investigation "would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application." *Id.* (quoting *Essa,* 2005 WL 3440827 at *2).

This Court sympathizes with Mr. Affaneh's desire to become a U.S. citizen and with the delay that he must endure waiting for the completion of the application process. However, this Court is not in a position to provide the relief he requests.

Therefore, this matter is remanded to the USCIS for a determination of Affaneh's naturalization application promptly after the FBI background check is completed. The Defendants' motion to dismiss or remand is OVERRULED in part and GRANTED in part.

Affaneh also seeks attorney's fees. Since this issue was not briefed by either of the parties, it is not addressed herein. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Ninth day of January, 2007.

                     s/Thomas M. Rose

                 _____
                    THOMAS M. ROSE
                 UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record